```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------- x
 ALEX KEVIN TAVERAS,

                Plaintiff,
                                                    MEMORANDUM AND
         - against -                                ORDER

 DENNIS HASTY, BUREAU OF PRISONS,
 M.D.C., BROOKLYN, OFFICER CHANA                    Civil Action No.
 BROTHERS, OFFICER GLADSTONE MOORE,                 CV-02-1307 (DGT)
 LIEUTENANT ROBERT THOMAS, UNITED
 STATES OF AMERICA,

                Defendants.

------------------------------------------------- x
```

TRAGER, J.

Alex Kevin Taveras ("plaintiff"), proceeding pro se, brings this action against various individual federal prison officials and the United States of America, alleging Bivens (Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971)) and common law tort claims arising out of a fight he had with another inmate in a recreation cell at the Metropolitan Detention Center, Brooklyn ("MDC") on February 20, 2001. Defendants moved to dismiss plaintiff's complaint pursuant to Fed. R. Civ. Pro. 56(c), on the grounds that 1) plaintiff has failed to exhaust his administrative remedies as required by Prison Litigation Reform Act ("PLRA"), 42 U.S.C. Sec. 1997e(a) and 2) plaintiff's claims are barred by the discretionary function exception to the Federal Tort Claims Act ("FTCA"). For the reasons discussed below, the government's motion is granted.

## Background

**(1)**

On February 14, 2001, while awaiting sentencing, plaintiff was placed in the West Special Housing Unit ("WSHU") at the MDC on Administrative Detention status for a violation of Bureau of Prisons ("BOP") Code 203, Threatening Another With Bodily Harm or Any Other Offense. See Ex. B to Def. 56.1 (Declaration of MDC Captain Salvatore Lopresti, dated May 6, 2003 ("Lopresti Decl.")). This incident was referred to the Disciplinary Hearing Officer ("DHO") for a hearing. On February 20, the DHO referred the incident report back to the Unit Discipline Committee and amended the Code 203 charge to a Code 312 violation, Being Insolent to a Staff Member. Plaintiff was found guilty of this violation and sanctioned with a thirty day loss of telephone privileges. Lopresti Decl. ¶ 6.

**(2)**

On the morning of February 20, 2001, while in WSHU, plaintiff was offered recreation time. Upon acceptance of the offer of recreation time, plaintiff was placed in a recreation cell with another WSHU inmate, Julio Rivera ("Rivera"), who was on Disciplinary Segregation status at that time. As a matter of BOP standard policy and practice, inmates placed in WSHU, either on Disciplinary Segregation status or Administrative Detention status can be housed in WSHU cells and placed on recreation deck

with other inmates unless an inmate has been specifically designated as being on "rec and cell alone" status. See Lopresti Decl. ¶ 4. Rivera was not on "rec and cell alone" status.[1] Id. ¶ 8. WSHU at MDC consists of two ranges and each range has numerous recreation cells ("rec cells"), which are, in the aggregate, referred to as the recreation deck ("rec deck"). See Ex. F, Declaration of Chana Brothers ("Brothers Decl."). Each rec cell has a locked door and can house up to four inmates at any one time.

During plaintiff's recreation time on the day in question, defendants Officer Chana Brothers and Officer Gladstone Moore were on patrol in the vicinity of plaintiff's rec cell. See Brothers Decl. ¶¶ 5-6. At approximately 9:40 a.m. Officer Brothers while on her patrol observed three inmates congregated on the rec deck. See Def. 56.1 ¶ 16. As Officer Brothers proceeded towards the end of the rec deck, she observed, in rec cell #2, plaintiff and Rivera in a bear hug fight. Brothers Decl. ¶ 7. As soon as she saw them, Officer Brothers sounded her body alarm and announced on her radio that two inmates were in a fight. Brothers Decl. ¶ 8. As Officer Brothers waited for assistance, the two inmates continued to fight. Id. It is standard BOP operating procedure to await assistance in such

---

[1] Plaintiff appears to dispute this point in his opposition papers. However, as will be discussed *infra*, the disciplinary status of Rivera is ultimately beside the point.

situations in order to protect the safety of the correctional officers and inmates.  Id. ¶ 9.

Moments after Officer Brothers sounded her body alarm, numerous other correctional officers came to assist her in breaking up the fight between these two inmates.  Id.  The BOP officers who responded to the body alarm and the announcement over the radio included Officer Moore, Senior Officer Specialist Toledo, Correctional Officer Landvreugd, Senior Officer Jones, Unit Officer Shacks, Lieutenant Wilikins and Lieutenant Joseph. Id.  When Officer Moore heard the alarm and radio signal, he ran over from his post on range #2 to the range #1 rec deck to help. Id.  When he arrived, Officer Moore observed plaintiff and inmate Rivera in the rec cell together.  Id.  When sufficient assistance had arrived at the range #1 rec deck, Officer Brothers unlocked the door of rec cell #2 and other officers at the scene separated and handcuffed the plaintiff and Rivera.  Id. Plaintiff was taken to the MDC infirmary to assess whether he needed medical attention.  He was found to require only minor first aid to his right fist, left elbow, left side of his forehead and the right side of his face.  Id.

**Discussion**

**(1)**

**Exhaustion of Administrative Remedies**

The PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or any other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purpose of the exhaustion requirement is to improve prison administration, filter out frivolous claims and clarify the contours of controversies for cases that are ultimately brought to court. See Porter v. Nussle, 534 U.S. 516, 525 (2002).

PLRA's "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Id. at 532. It extends to cases, such as this one, where a plaintiff seeks a remedy not available through the administrative process, such as monetary damages. See Booth v. Churner, 532 U.S. 731, 733-34 (2001) (holding that exhaustion is required under the PLRA even if the plaintiff seeks only money damages and money damages are not available as relief).

The Administrative Remedy Program, as detailed in 28 C.F.R. § 542.10(a), sets forth a four-step process of exhaustion required for federal prison inmates to commence an action in

5

United States District Court. See 28 C.F.R. § 542.10(a). First, the inmate must present his concern informally to a staff member. See 28 C.F.R. § 542.13 (a). Second, the inmate is required to submit an Administrative Remedy Request to the warden of the facility or warden's designee via a BP-9 form. See 28 C.F.R. § 542.13(a); 28 C.F.R. § 542.14(a). Third, the inmate submits an appeal to the Regional Director via a BP-10 form. See 28 C.F.R. § 542.14(c)(4). Fourth, the inmate files an appeal with Office of General Counsel via a BP-11 form. See 28 C.F.R. § 542.15(a). Only after the completion of all four of these steps is an inmate allowed to file an action in the United States District Court.

It is undisputed that plaintiff has not filed any of these forms. See Def. 56.1. ¶ 41. Thus, the government correctly contends that plaintiff has failed to exhaust the administrative remedies with respect to his Bivens claims. See Government's Memorandum of Law in Support of Motion for Summary Judgment at 6.

With respect to his FTCA claims, the plaintiff has exhausted his administrative remedies. It is undisputed that on or about March 23, 2001, plaintiff filed a form SF-95 with the BOP, a claim form for personal injuries arising out of the February 20, 2001 incident. See Ex. B to Desai Decl. This claim was denied by the BOP's Regional Counsel on or about August 23, 2001. See Ex. C to Desai Decl. The denial expressly advised the plaintiff to "seek reconsideration from this office or bring an action against

the United States in an appropriate United States District Court." Id. Indeed, that is all that is required to exhaust administrative remedies under FTCA.[2] See 28 C.F.R. §§ 543.31, 543.32. In sum, while plaintiff's Bivens claims are barred for failure to comply with PLRA's exhaustion requirements, his FTCA claims may go forward.

**(2)**

**Plaintiff's claims under FTCA**[3]

To exercise subject matter jurisdiction in a tort action against the United States, the court must find that the federal government has waived its sovereign immunity. See Fazi v. United States, 935 F.2d 535, 537 (2d Cir. 1991). Through the FTCA, the government has consented to be sued in tort cases that are not "based upon the exercise or performance or the failure to exercise or to perform a discretionary function or duty on part of a federal agency or an employee of the government." 28 U.S.C.

---

[2] The exhaustion procedures under Bivens differ from those under FTCA and "it is entirely possible that [plaintiff] exhausted his administrative remedies for purposes of FTCA without exhausting remedies pursuant to the PLRA for purposes of filing a Bivens claim. See Hylton v. Federal Bureau of Prisons, No. 00-5747, 2002 WL 720605 at *2 (E.D.N.Y. Mar.11, 2002). See also Nwaokocha v. Sadowski, 369 F. Supp. 2d 362, 368 (E.D.N.Y.2005).

[3] In his complaint, plaintiff names the BOP, the MDC and prison personnel as defendants. However, a FTCA action does not properly lie against any defendant other than the United States of America. See 28 U.S.C. §1346(b); 28 U.S.C. §2679(b)(1). Thus, plaintiff's FTCA claims against all defendants, except the United States of America, are dismissed.

§ 2680(a). However, FTCA does not waive the government's immunity from suit if 1) acts or omissions alleged to be negligent involve an element of judgment or choice "not compelled by statute and regulation;" and 2) such judgment or choice is "grounded in 'considerations of public policy.'" See Coulthurst v. United States, 214 F.3d 106, 109 (2d Cir. 2000) (citations omitted). If the regulation or statute allows employee discretion, a "strong presumption" arises that the employee acts "are grounded in policy when exercising that discretion." United States v. Gaubert, 499 U.S. 315, 324 (1991); Ellis v. United States of America, No. 02 Civ. 8974, 2004 WL 880394 at *3 (S.D.N.Y., April 26, 2004).

The internal security of prisons is "normally left to the discretion of prison administrators." Rhodes v. Chapman, 452 U.S. 337, 349 n. 14 (1981) (citations omitted). The BOP is charged with the duties of "management and regulation of all Federal penal and correctional institutions" and "provid[ing] for the safekeeping, care and subsistence of all persons charged with or convicted of offenses." 18 U.S.C. § 4042(a). Although the statute imposes a duty of care on the BOP, it addresses only the general responsibilities of BOP employees and "sets forth no particular conduct BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates." Moody v. Daggett, 429 U.S. 78, 88 n. 9 (1976). "The absence of specific

guidelines of appropriate conduct by BOP officials in administering these duties, therefore, leaves judgment or choice to the BOP officials." Scrima v. Hasty, No. 97 Civ. 8433, 1998 WL 661478, at *3 (S.D.N.Y. Sept.24, 1998).

The crux of plaintiff's claim appears to be that prison officials should not have put him in the rec cell with Rivera, allegedly because they should have known of the latter's violent propensities.[4] See Second Amended Complaint at 5. Not only is there no indication in the record, other than plaintiff's own assertions, that Rivera should have been segregated from the general prison population, this claim appears to challenge the prison authorities' "day to day management decisions" which "allow a choice among a range of permissible conduct." See Gaubert, 499 U.S. at 325. Such decisions clearly fall within the discretionary-function exception to the FTCA. See Santana-Rosa v. United States, 335 F.3d 39, 44 (1st Cir. 2003) (holding that classification and assignment decisions, as well as the allocation of guards and other correctional staff, fall within discretionary-function exception to FTCA); Cohen v. United

---

[4] Plaintiff also contends that the government "deliberately" placed Rivera with the plaintiff "because plaintiff was a cooperating witness for the government." Plaintiff's Opposition to Defendants' Motion for Summary Judgment at 3. Plaintiff's contention is a non sequitur. It is not clear why the government would place a cooperating witness in a place where there was a chance of him being assaulted; indeed the fact that the government placed its witness where it did most likely indicates its confidence in that place's safety.

9

States, 151 F.3d 1338, 1344 (11th Cir. 1998) (holding that assault caused by negligent classification and placement of inmates is barred by the discretionary function exception to FTCA). Indeed, courts have dismissed inmate FTCA claims alleging BOP negligence on the basis of discretionary function exception in cases far more egregious than this. See e.g., Ortiz v. United States, No. 01 Civ. 4665, 2002 WL 1492115 at *4 (S.D.N.Y. July 11, 2002) (failure to prevent inmate access to razors); Scrima, 1998 WL 661478, at *3 (failure to segregate HIV-positive inmate); Carter v. United States, No. 02-0880, 2002 WL 32332081 at *4 (D.S.C. Dec. 13, 2002) (failure to transfer an inmate to a higher security facility after attack on another inmate).

Plaintiff could overcome the FTCA's discretionary function bar if he could show that the actions of prison personnel were a result of laziness or carelessness. See Coulthurst, 214 F.3d at 109. Here, however, viewing the facts in a light most favorable to the plaintiff, the applicability of the discretionary function exception turns on whether Officer Brothers's decision to wait for backup, instead of breaking up the fight immediately, "involve[d] an element of judgment or choice" and was "grounded in public policy". Id. Given the standard BOP operating procedure to await assistance in such situations in order to protect the safety of the correctional officers, the decision of

Officer Brothers does not appear unreasonable.[5] Officer Brothers's decision was not "compelled by statute or regulation," as there exists no provision that mandates breaking up inmate fights immediately, possibly at the expense of safety of the prison personnel. Since this on-the-spot decision reflected her personal judgment that the best course of action in that situation was to await backup and since, as a result of her discretion, her decision was presumptively grounded in public policy, and reflected the BOP standard operating procedure, the discretionary function exception to FTCA bars plaintiff's claims.

(3)

**Plaintiff's Bivens Claims**

Plaintiff's complaint can be construed to assert Bivens claims against the defendants both in their individual and official capacities. Although these claims are barred because plaintiff did not exhaust his administrative remedies, as noted above, the merits will, nonetheless, be considered.

It is well-settled that Bivens claims against federal officers in their official capacities are prohibited under the doctrine of sovereign immunity. Robinson v. Overseas Military

---

[5] The discretionary function exception bars plaintiff's claims even where an employee abused his discretion or was negligent in performance of a discretionary function. In re: Agent Orange Product Liab. Litig., 818 F.2d 210, 215 (2d Cir. 1987). Thus, even if Officer Brothers had been negligent in allowing the fight to continue, plaintiff's claims would still be barred by the discretionary function exception.

11

Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994). To sustain <u>Bivens</u> claims against the defendants in their individual capacities, plaintiff would need to show that they either participated in or personally authorized wrongful actions by others. See <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Conclusory allegations of involvement, such as those that the plaintiff attempts to make here, are insufficient. See <u>Barbera v. Smith</u>, 836 F.2d 96, 99 (2d Cir. 1987). Furthermore, to state a <u>Bivens</u> claim for a violation of Eighth Amendment rights, plaintiff must show that the officers knew of and disregarded "an excessive risk to [his] health and safety." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994). Moreover, the officer's conduct must be "in conscious disregard or indifferent to that risk." <u>Bryant v. Maffucci</u>, 923 F.2d 979, 985 (2d Cir.1991).

It is clear from the record that Officer Moore and others responded immediately to Officer Brothers's call for assistance and broke up the fight as soon as they got there. Def. 56.1 ¶ 26. It is similarly clear from the record that Warden Hasty was not present at the scene and did not authorize any allegedly wrongful action on part of the officers. <u>Id.</u> ¶ 34. Finally, the conduct of Officer Brothers, in allowing the fight to continue, falls far short of evincing "conscious disregard" of an "excessive risk to inmate's health and safety," given that her conduct followed the standard BOP operating procedure to await

assistance in situations where the safety of the correctional officers may otherwise be compromised. Id. ¶ 20.

With regard to plaintiff's claim that placing him in the same rec cell with Rivera jeopardized his safety, there appears to be no indication in the record that any of the defendants were involved in placing him there.[6]  Because plaintiff cannot show the defendants' personal involvement in the alleged constitutional violations, his Bivens claims must also fail.

**Conclusion**

For the foregoing reasons, the government's motion for summary judgment is granted.  The Clerk of the Court is directed to close this case.


Dated:     Brooklyn, New York
           July 7, 2005

                                    ORDERED:

                                    _____/s/_____
                                    David G. Trager
                                    United States District Judge

---

[6]  It should be noted that plaintiff was free to reject the offer of time on the rec deck. In accepting the offer, plaintiff specifically acknowledged: "I am not aware of any reason why my contact with convicted prisoners would pose a threat to my safety." See Def.56.1 ¶¶ 39-40.

SENT TO:

Alex Kevin Taveras
20765 N.W. 9th Court
Apt. #201
Miami, FL 33169

Claire S. Kedeshian
United States Attorneys Office
Eastern District of New York
One Pierrepont Plaza, 14th Floor
Brooklyn, NY 11201